UNITED STATES BANKRUPTCY COURT

DISTRICT OF NEW MEXICO

In re:

WAYNE KENNETH AUGE, II,                                  No. 14-10443 t11

    Debtor.

THE NORTHERN NEW MEXICO
ORTHOPAEDIC CENTER, P.C.,

    Plaintiff,

v.                                                       Adv. No. 14-01057 t

WAYNE KENNETH AUGE, individually
and as trustee of the Covalent Global
Trust u/t/i dated 12/1/03,

    Defendant.

## MEMORANDUM OPINION

Plaintiff brought this adversary proceeding to determine whether a large debt owed by the debtor is nondischargeable. Plaintiff now asks for summary judgment on all counts, based upon a pre-petition state court judgment. For the reasons set forth below, the request will be granted in part.

### I.     FACTS[1]

For the purposes of ruling on the Motion, the Court finds that there is no genuine dispute about the following facts, which were established by the Findings of Fact, Conclusions of Law and Judgment (the "Findings and Conclusions") entered by the Honorable Raymond Ortiz, Chief

---

[1] To the extent any finding of fact is construed as a conclusion of law, it is adopted as such, and vice versa. The Court may make additional findings of fact and conclusions of law as it deems appropriate or as may be requested by any of the parties.

Judge of New Mexico's First Judicial District Court. Judge Ortiz entered the Findings and Conclusions in a case captioned *Steven Jones, D.O., et al., v. Wayne K. Augé, II, M.D.*, No. D-101-CV-2011-00192 (the "State Court Action").

NNMOC is a New Mexico corporation formed in 1988 by Dr. Wayne K. Augé ("Augé"). NNMOC is headquartered in Santa Fe, New Mexico. Augé was the President and Treasurer of NNMOC until 2008, at which time Dr. Brant Bair ("Bair") became the President and Augé became the Treasurer and Secretary.

Between 2008 and 2010 NNMOC had four equal shareholders: Augé, Bair, Dr. Steven Jones ("Jones"), and Dr. Sanford Schulhofer ("Schulhofer"). All the shareholders signed Shareholder Employment Agreements with NNMOC. The agreements were prepared by Augé. Augé represented to Bair, Jones, and Schulhofer that their agreements were similar to the one he signed, except that Augé's agreement did not have a noncompete provision and could only be terminated for cause. In fact, Augé's agreement also had substantially better deferred compensation terms.

Judge Ortiz found that Augé defrauded Bair, Jones, and Schulhofer by concealing and misrepresenting the enhanced deferred compensation terms of his agreement.

Until January 2010, Augé controlled all the important financial aspects of NNMOC, including payment of salaries for the shareholders and other employees, and monthly bonuses to shareholders. These latter were calculated for each shareholder by taking the amount he billed and collected for the month and subtracting his base salary and a portion of the business's overhead.

Augé was in charge of calculating shareholder bonuses. Between 2007 and 2009, Augé paid himself extra bonuses, to which he was not entitled. Between August, 2007 and December

31, 2008, Augé paid himself improper bonuses of $173,187.54, while in 2009 he paid himself $199,233.83 in improper bonuses. Augé did not tell the other shareholders about the overpayments, and made efforts to conceal them. The shareholders did not discover the improper bonuses until conducting discovery in the State Court Action.

Judge Ortiz found additional NNMOC overpayments to Augé in 2010, but the record is not clear whether the overpayments were of the same character as those made in 2007-2009.

On January 14, 2011 NNMOC, Bair, Jones, and Schulhofer filed the State Court Action, alleging inter alia fraud, securities fraud, breach of fiduciary duty, breach of contract, and prima facie tort. On March 14, 2012, after trial on the merits, Judge Ortiz entered the Findings and Conclusions, accompanied by a final judgment in plaintiffs' favor on all counts. The judgment awarded NNMOC $527,821.49 for the negative balance owing under Augé's Shareholder Employment Agreement; $72,936 to NNMOC for the negative value of Augé's shares on NNMOC; punitive damages of $1,000,000; pre- and post-judgment interest of 15%; and attorney's fees and costs.[2]

Augé appealed the judgment. On September 16, 2014, the New Mexico Court of Appeals affirmed the judgment, except that it remanded for recalculation compensatory damages of $75,303, and reversed the prima facie tort judgment. Augé's petition for certiorari was denied by the New Mexico Supreme Court on January 14, 2015.

On February 14, 2014, Augé commenced this Chapter 11 case.

---

[2] Inexplicably, none of the individual plaintiffs were awarded any damages, even though (as far as the Court can tell) they all asserted claims that prevailed.

## II. DISCUSSION

### A. Summary Judgment Standards.

Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56. Rule 56 applies in adversary proceedings. *See* Bankruptcy Rule 7056. "[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and ... [must] demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). In determining whether summary judgment should be granted, the Court will view the record in the light most favorable to the party opposing summary judgment. *Harris v. Beneficial Oklahoma, Inc. (In re Harris)*, 209 B.R. 990, 995 (10th Cir. BAP 1997).

The party opposing a motion for summary judgment must "set forth specific facts showing that there is a genuine issue for trial as to those dispositive matters for which it carries the burden of proof." *Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc.*, 912 F.2d 1238, 1241 (10th Cir. 1990).

To deny a motion for summary judgment, genuine fact issues must exist that "can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). A mere "scintilla" of evidence will not avoid summary judgment. *Vitkus v. Beatrice Co.*, 11 F.3d 1535, 1539 (10th Cir. 1993). Rather, there must be sufficient evidence on which the fact finder could reasonably find for the nonmoving party. *See Anderson*, 477 U.S. at 251; *Vitkus*, 11 F.3d at 1539.

B.  Issue Preclusion

Bankruptcy courts may not be used by parties to relitigate issues previously decided in state court. The Full Faith and Credit Act, 28 U.S.C. § 1738 et seq., requires this Court to "give the same preclusive effect to a state-court judgment that the judgment would be given in the courts of the state in which the judgment was rendered." *Jarrett v. Gramling,* 841 F.2d 354, 356 (10th Cir. 1988). Issue preclusion prevents relitigation of issues that were previously determined by a court of competent jurisdiction. *See Strickland v. City of Albuquerque,* 130 F.3d 1408, 1411 (10th Cir.1997) (citing *Kremer v. Chem. Constr. Corp.,* 456 U.S. 461, 466 (1982)).

New Mexico recognizes issue preclusion. *See Shovelin v. Cent. N.M. Elec. Co-op., Inc.,* 850 P.2d 996, 1000 (N.M. 1993) (setting forth elements of issue preclusion in New Mexico). Under New Mexico law, issue preclusion requires proof of four elements: "(1) the party to be estopped was a party to the prior proceeding, (2) the cause of action in the case presently before the court is different from the cause of action in the prior adjudication, (3) the issue was actually litigated in the prior adjudication, and (4) the issue was necessarily determined in the prior litigation." *Shovelin*, 850 P.2d at 1000.

All four of the *Shovelin* elements are satisfied in this matter, so issue preclusion applies. Thus, to the extent a fact was actually litigated and necessarily determined in the State Court Action, Judge Ortiz's finding is binding on this Court. NNMOC argues that such facts entitle NNMOC to summary judgment on all counts.

C.  Dischargeability of Debts

1.  In General. Exceptions to discharge are "narrowly construed [such that] doubt as to the meaning and breadth of a statutory exception is to be resolved in the debtor's favor." *Cobra Well Testers, LLC v. Carlson (In re Carlson),* 2008 WL 8677441, at *2 (10th Cir.

2008) (quoting *Bellco First Fed. Credit Union v. Kaspar (In re Kaspar),* 125 F.3d 1358, 1361 (10th Cir. 1997)). A creditor seeking to avoid discharge bears the burden of proving the elements of § 523(a) by a preponderance of the evidence. *Fowler Bros. v. Young (In re Young),* 91 F.3d 1367, 1373 (10th Cir. 1996).

Denial of discharge is a harsh remedy, to be reserved for a truly pernicious debtor. *Soft Sheen Products, Inc. v. Johnson (In re Johnson),* 98 B.R. 359, 367 (Bankr. N.D. Ill. 1988) (citing *In re Shebel,* 54 B.R. 199, 204 (Bankr. D. Vt. 1985)). The provisions denying the discharge are construed liberally in favor of the debtor and strictly against the creditor. *Id.* at 364.

       2.     Section 523(a)(2)(A). Section 523(a)(2)(A) excepts from discharge debts for "money, property, services, or an extension, or renewal of credit, to the extent obtained by false pretenses, a false representation, or actual fraud." § 523(a)(2)(A).[3] A creditor seeking to except its debt from discharge under § 523(a)(2)(A) must prove, by a preponderance of the evidence that: (a) The debtor made a false representation; (b) the debtor made the false representation with the intent to deceive the creditor; (c) the creditor relied on the false representation; (d) the creditor's reliance was justifiable; and (e) the representation caused the creditor to sustain a loss. *Johnson v. Riebesell (In re Riebesell)*, 586 F.3d 782, 789 (10th Cir. 2009) (quoting *In re Young*, 91 F.3d at 1373).

The Tenth Circuit construes § 523(a)(2)(A) narrowly to limit the harsh result of nondischargeability to "frauds involving moral turpitude or intentional wrong." *DSC National Properties, LLC v. Johnson (In re Johnson)*, 477 B.R. 156, 169 (10th Cir. BAP 2012) (quoting *Driggs v. Black (In re Black)*, 787 F.2d 503, 505 (10th Cir. 1986), abrogated on other grounds by *Grogan v. Garner*, 498 U.S. 279 (1991). To avoid discharge based on false pretenses, false

---

[3] All statutory citations are to 11 U.S.C. unless otherwise noted.

Case 14-01057-t    Doc 25    Filed 04/22/15    Entered 04/22/15 13:20:40 Page 6 of 13

representation, or actual fraud, the creditor must prove the debtor "acted with the *subjective intent* to deceive the creditor." *Johnson*, 477 B.R. at 169 (emphasis in original).

The Findings and Conclusions are not sufficient to support a grant of summary judgment under § 523(a)(2)(A). Judge Ortiz made a number of findings that Augé committed fraud, but the findings all relate to Augé's dealings with Drs. Bair, Jones, and Schulhofer, not NNMOC. Bair, Jones, and Schulhofer are not plaintiffs in this adversary proceeding. There is no evidence Augé defrauded NNMOC, except to the extent embezzlement implicates fraud (see below). NNMOC apparently pleaded fraud (the Court does not have a copy of the complaint) and received a judgment on its fraud claim, but the Findings and Conclusions do not show that Augé defrauded NNMOC. Judge Ortiz' findings of fact are very specific and detailed, while the legal conclusions and judgment are general. In particular, the judgment lumps all the claims together and awards damages to NNMOC alone, without specifying what damages go with which claim. As often happens, it appears the Findings and Conclusions were not drafted with an eye to a potential nondischargeability action in bankruptcy court.

3. 523(a)(4); Fraud or Defalcation While Acting in A Fiduciary Capacity. Debts arising from "fraud or defalcation while acting in a fiduciary capacity . . . ." are excepted from the general discharge. § 523(a)(4). A key issue in any such § 523(a)(4) claim is the nature of the relationship between the parties. A § 523(a)(4) "fraud or defalcation" claim requires as a threshold matter "the existence of a fiduciary relationship between the debtor and the objecting party." *Antlers Roof–Truss and Builders Supply v. Storie (In Re Storie)*, 216 B.R. 283, 286 (10th Cir. BAP 1997). The existence of such a fiduciary relationship is determined by federal law. *In re Young*, 91 F.3d at 1371; *Sawaged v. Sawaged (In re Sawaged)*, 2011 WL 880464, at *3 (10th Cir. BAP 2011). Under Tenth Circuit law, a § 523(a)(4) fiduciary relationship exists only where

-7-

a debtor has been entrusted with money pursuant to "an express or technical trust."  *Sawaged*, at *3 (citing *In re Young*, 91 F.3d at 1371 and *Allen v. Romero (In re Romero)*, 535 F.2d 618, 621 (10th Cir. 1976)); *Kalinowski v. Kalinowski (In re Kalinowski)*, 449 B.R. 797, 806 (Bankr. D.N.M. 2011), affirmed, 482 B.R. 334 (10th Cir. BAP 2012) (fiduciary duty required to establish claim under § 523(a)(4) is extremely narrow and only arises when there is an express or technical trust).

An express trust is one created by written contract.  *See, e.g., In re Talcott,* 29 B.R. 874, 878 (Bankr. D. Kan. 1983) (written agreement required); 4 Collier on Bankruptcy 523.10[1][d] (16th ed.) ("commonly, an express trust is created by a formal written agreement")).  There is no evidence Augé had control over any NNMOC assets pursuant to a written trust agreement.

A technical trust typically is created by statute.  *See, e.g., Kalinowski,* 449 B.R. at 806 (finding that a New Mexico statute imposed a technical trust on certain funds paid to licensed contractors).  There is no evidence that the misappropriated funds were subject to a technical trust because of a New Mexico or other statute.

Being an officer in charge of corporate finances is not enough to create an express or technical trust.  *See, e.g., Bonito Land & Livestock, Inc. v. Green (In re Green),* 386 B.R. 865, 870-71 (Bankr. D.N.M. 2008) (rejecting the argument that under New Mexico law corporate officers act in a "fiduciary capacity" for § 523(a)(4) purposes); *In re Kalinowski*, 449 B.R. at 809, n. 19 (citing *Green*); *Cal-Micro, Inc. v. Cantrell (In re Cantrell),* 329 F.3d 1119, 1127 (9th Cir. 2003) (same).

Because the Findings and Conclusions do not contain sufficient evidence of an express or technical trust, NNMOC is not entitled to summary judgment under this prong of § 523(a)(4).

4. § 534(a)(4); Embezzlement. A creditor may prove § 523(a)(4) embezzlement by showing: (1) his property was entrusted[4] to the debtor; (2) the debtor appropriated the property for a use other than the use for which it was entrusted; and (3) the circumstances indicate fraud. *Bd. of Trustees v. Bucci (In re Bucci)*, 493 F.3d 635, 644 (6th Cir. 2007). *See also Klemens v. Wallace (In re Wallace)*, 840 F.2d 762, 765 (10th Cir. 1988) (embezzlement consists of "the fraudulent appropriation of property by a person to whom such property has been entrusted or into whose hands it has lawfully come.").[5]

The Findings and Conclusions establish the necessary elements of NNMOC's § 523(a)(4) embezzlement claim. First, Judge Ortiz found that Augé was entrusted with NNMOC's finances and bank accounts. Throughout the history of NNMOC until January 2010, Augé controlled the important financial aspects of the corporation, including the payment of salaries and bonuses. Second, Judge Ortiz found that Augé fraudulently misappropriated NNMOC's property by paying himself unwarranted and excessive bonuses. Based on these findings, NNMOC is entitled to summary judgment that the portion of its claim against Augé arising from Augé's improper bonuses is nondischargeable embezzlement. *See In re Bell*, 498 B.R. 463 (Bankr. E.D. Pa. 2013) (officer's unauthorized withdrawal of corporate funds for compensation, committed with fraudulent intent, is embezzlement); *In re Lane,* 445 B.R. 555 (Bankr. E.D. Va. 2011)

---

[4] "Entrusting" property to the debtor can be done without creating an "express or technical trust." *See, e.g., In re Holdaway*, 388 B.R. 767 (Bankr. S.D. Tex. 2008), affirmed, 2009 WL 820167 (S.D. Tex. 2009) (finding there was no trust relationship for § 523(a)(4) fraud or defalcation purposes, but that debtor embezzled by misappropriating property entrusted to her); *In re Harland*, 235 B.R. 769 (Bankr. E.D. Pa. 1999) (same).

[5] Embezzlement differs from larceny in that "[e]mbezzled property is originally obtained in a lawful manner, while in larceny the property is unlawfully obtained." *Musgrave v. Musgrave (In re Musgrave)*, 2011 WL 312883, at *5 (10th Cir. BAP 2011). Larceny is defined as "the fraudulent and wrongful taking and carrying away of the property of another with intent to convert the property to the taker's use without the consent of the owner." *Musgrave*, 2011 WL 312883, at *5 (quoting 4 Collier on Bankruptcy ¶ 523.10 [2], 523–77 (16th ed. 2009)).

(corporate officer's misappropriation of corporate funds constituted embezzlement); *In re Mills,* 2008 WL 2787252 (Bankr. D. Id. 2008) (officer' unauthorized withdrawals of corporate funds for personal purposes can be embezzlement); *KMK Factoring, LLC v. William McKnew (In re McKnew),* 270 B.R. 593, 633 (Bankr. E.D. Va. 2001) (officer embezzled when he withdrew corporate funds in excess of "definite, non-ambiguous compensation arrangement"); *In re Scheller,* 265 B.R. 39 (Bankr. S.D.N.Y. 2001) (partner commits embezzlement by diverting partnership funds for his own use).

    5. § 523(a)(6). Section 523(a)(6) provides that "discharge . . . does not discharge an individual debtor from any debt for willful and malicious injury by the debtor to another entity or to the property of another entity. . . ."

This subsection requires proof that there be: (i) an injury to person or property; (ii) by the debtor; (iii) that was willful; and (iv) that was malicious. *Fletcher v. Deerman (In re Deerman),* 482 B.R. 344, 369 (Bankr. D.N.M. 2012). In *In re Parra*, 483 B.R. 752 (Bankr. D.N.M. 2012), the court discussed the "willful" and "malicious" requirements:

> [N]on-dischargeability under [§ 523(a)(6) ] requires that the debtor's actions be both willful and malicious. The 'willful' element requires both an intentional act and an intended harm; an intentional act that leads to harm is not sufficient ... [B]ecause the Tenth Circuit directs that willful and malicious are separate, distinct requirements, 'malicious' must be defined so that it is distinguishable from 'willful.' This Court concludes that the 'malicious' component of 11 U.S.C. § 523(a)(6) requires an intentional, wrongful act, done without justification or excuse.

483 B.R. at 771–73 (citations omitted). The holding in *Parra* synthesizes the Tenth Circuit's ruling in *Panalis v. Moore (In re Moore),* 357 F.3d 1125 (10th Cir. 2004),[6] with the Supreme

---

[6] "Without proof of *both* [willful and malicious] an objection to discharge under [§ 523(a)(6)] must fail. *Id.* at 1129 (emphasis in original).

Court's holding in *Kawaauhau v. Geiger,* 523 U.S. 57 (1998).[7] The Court agrees with *Parra* that, to be nondischargeable under § 523(a)(6), the debt must, *inter alia*, be the result of an intentional act and intended harm (willful), and also the result of an intentional, wrongful act, done without justification or excuse (malicious).

The Tenth Circuit uses a subjective standard in determining whether a defendant desired to cause injury or believed the injury was substantially certain to occur. *Via Christi Regional Medical Ctr. v. Englehart (In re Englehart),* 2000 WL 1275614, at *3 (10th Cir. 2000) ("[T]he 'willful and malicious injury' exception to dischargeability in § 523(a)(6) turns on the state of mind of the debtor, who must have wished to cause injury or at least believed it was substantially certain to occur."); *Saturn Systems, Inc. v. Militare (In re Militare),* 2011 WL 4625024, at *3 (Bankr. D. Colo. 2011) (citing *Bombardier Capital, Inc. v. Tinkler (In re Tinkler),* 311 B.R. 869, 878 (Bankr. D. Colo. 2004)) (same).

It is clear from Judge Ortiz's Findings and Conclusions that Augé injured the other shareholders by paying himself excessive bonuses. There are no findings or conclusions, however, that Augé had the requisite state of mind to satisfy the subjective "malicious" standard required by the Tenth Circuit. Furthermore, Judge Ortiz focused on the injury to the shareholders rather than NNMOC. It could be that even if Augé maliciously intended to injure Drs. Bair, Jones, and Schulhofer, he did not have the same intent toward NNMOC, a corporation he formed and partly owned.

---

[7] "The word 'willful' in (a)(6) modifies the word 'injury' indicating that nondischargeability takes a deliberate or intentional injury, not merely a deliberate or intentional act that leads to injury." *Geiger,* 523 U.S. at 61.

D. Damages

With a nondischargeable embezzlement debt, all damages "arising from" the embezzlement are nondischargeable. *In re Stacy Baker,* 2014 WL 948656 (Bankr. D.N.M. 2014) (citing *Cohen v. de la Cruz,* 523 U.S. 213 (1998)). *See also In re Musgrave,* 2011 WL 312883, at *11 (using the "arising from" language and citing *Cohen*); *In re Houng,* 499 B.R. 751, 775 (C.D. Cal. 2013); *In re Roussos,* 251 B.R. 86, 94 (9th Cir. BAP 2000), affirmed, 33 Fed. Appx. 365 (9th Cir. 2002).

NNMOC is entitled to summary judgment that $372,421.37 of Augé's debt is nondischargeable under § 523(a)(4) for embezzlement. Similarly, the award of 15% pre- and post- judgment interest on such amount is nondischargeable. There are fact issues about the remaining damages. For example, were the punitive damages awarded for embezzlement, fraud, securities fraud, breach of contract, or breach of duty? Or jointly and severally for each claim? Were the attorney fees awarded under the Shareholders Employment Agreement (no copy of which has been provided to the Court) or under some other theory? Are attorney fees part of the embezzlement judgement? If so, under what theory? Are the other actual damage amounts (including the negative share balance) related to embezzlement or some other claim? These questions will have to be resolved at trial.

III. CONCLUSION

NNMOC is entitled to summary judgment that $372,421.37 of its claim against Augé, plus 15% interest accruing after January 14, 2011, is nondischargeable. All other issues remain for trial. The Court will enter an order consistent with this Memorandum Opinion.

_____

Hon. David T. Thuma
United States Bankruptcy Judge

Entered: April 22, 2015

Copies to:

Daniel J. Behles
3800 Osuna Road NE, Ste. #2
Albuquerque, NM 87109

Julia B. Rose, Esq.
P.O. Box 2503
Santa Fe, NM 87504

Daniel A. White
320 Gold Ave. SW, Ste. 300A
Albuquerque, NM 87102

-13-

Case 14-01057-t    Doc 25    Filed 04/22/15    Entered 04/22/15 13:20:40 Page 13 of 13